*Per cur.* There can be no possible difficulty. The case is at least as strong as that of British subjects, where a discharge by the bankrupt laws of England will protect the person of the bankrupt in this state.

Let the exoneretur be entered.

---

#### ANONYMOUS.

Plaintiff in a foreign attachment may execute a writ of inquiry, returnable on the second return day of the term.

ON motion of Mr. Hallowel, ruled by the court that on a foreign attachment, the plaintiff having obtained judgment, may execute a writ of inquiry of damages, returnable on the second return day of the term.

---

#### WILLIAM RALSTON *against* JAMES CUMMINS.

No new trial where justice has been done, on a technical exception to the form of action.

MOTION for a new trial. The cause had been tried at the sittings on the 14th March last, and the plaintiff had recovered 521*l.* 8*s.* 9*d.* damages on the following facts:

On the 20th May 1779, the defendant and his wife conveyed by deed to the plaintiff a tract of 60 acres of land, part of a larger tract of 300 acres, situate in Cecil county, in Maryland, in consideration of 9000*l.* with covenant of general warranty.

This deed was acknowledged on the 4th July following, before M'Kean, C. J., but the same was irregular. as the law of that state of November 1766, cap. 14, § 4, directs that the deeds of non-residents for lands there, shall be acknowledged before a judge of the general court, or two justices.

On the 14th October 1783, the defendant conveyed to Hugh Fulton the same lands, in consideration of 350*l.* by another deed, with covenants that he was seized of a good title, and would warrant the same against all claims; and in case the now plaintiff should institute a suit therefor, that he would pay all expenses and costs.

This last deed was regularly acknowledged before two justices in Maryland, as the law requires.

The plaintiff commenced his ejectment in Maryland, against Fulton, which came on to trial on the 12th October 1789, when a verdict passed against him for the 60 acres, and judgment was thereupon rendered for the defendant. He afterwards brought the present suit in *indebitatus assumpsit,* to recover damages for the money he had thus been defrauded of.

The defendant's counsel now insisted, that convenant should have been brought on the express warranty, and that case would not lie, and were about to cite cases:

But the court interrupted them, and said the defendant applied to the discretion of the court with a bad grace after so gross a fraud. What merit can he lay before us? None. Has injustice been done to him? No. We will not determine the legal question now started, and whatever our sentiments may be thereon, we will not turn the plaintiff round to a new form of action, on a mere technical exception.

Motion denied.

Messrs. M. Levy and J. B. M'Kean, *pro quer.*
Messrs. Ingersoll and Porter, *pro def.*

———————•◆•———————

RESPUBLICA *against* PATRICK DONAGAN and FRANCIS COX.

Yeates<br>2 Y   437<br>28 SC   403

Surety for the good behaviour may be ordered by the court after acquittal of a prisoner in such sum and for such length of time, as the public safety requires.

ON a *certiorari* directed to the justices of Oyer and Terminer of Dauphin county, it was returned, that on the 17th June 1798, the prisoners had been tried as accessaries before the fact to the murder of Francis Shitz, and had been found not guilty by a jury of the country. And that the court by separate rules, had ordered, that each of them should give security to keep the peace, and be of good behaviour to all the liege citizens of the United States, and in particular to Peter Shitz, for the term of fourteen years, each in the sum of 10,000 dollars and two good sureties in 10,000 dollars each.

There was strong reason to believe that the prisoners had been concerned in a most horrid murder, though there was not sufficient evidence to convict them of the crime. The court directed them to give the above security, under the firm opinion, that they were persons of most dangerous character, and not, being able to give the security, they had remained in gaol. Application had been made to the court, who refused to take off or moderate the bail, and referred them to this court. Application was also made to Yeates and Smith justices, at the last Nisi Prius, at Harrisburgh, on their behalf, but they conceived they had no authority to interpose, and only directed the sheriff that every office of humanity should be shown to them, consistent with their safe keeping.